# IN THE UNITED DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SHELBY BROWN, Individually and on behalf of others similarly situated,** | § § § | |
| | § | **CIVIL ACTION NO. 4:16-cv-001152** |
| **Plaintiff** | § § | |
| **v.** | § § | **DEMAND FOR JURY TRIAL** |
| | § | |
| **PRODUCTION TESTING SERVICES, INC. and ROBERT A. HOFF** | § § § | |
| **Defendants.** | § § | |

---

## PLAINTIFFS' FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

---

TO THE HONORABLE COURT:

COME NOW Plaintiffs Shelby Brown and opt-in Plaintiff Tommy Britt, individually and on behalf of other former or present employees similarly situated, and file this their first amended collective and class action complaint against Defendants Production Testing Services, Inc. and Robert A. Hoff seeking to recover overtime compensation, liquidated damages, attorney's fees and costs under the provisions of § 216(b) of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. §§ 201, *et seq.* (the "Act" or "FLSA")], and the Alaska Wage and Hour Act (AWHA) Sec. 23.10.060 and would respectfully show the Court the following:

## PARTIES

1.  Plaintiff Shelby Brown is a United States citizen and resident of Washington. Plaintiff Shelby Brown was employed by Defendant Production Testing Services, Inc. His consent to be a Plaintiff in this collective and class action is on file. Dkt. 1.

2.  Plaintiff Tommy Britt is a United States citizen and resident of Washington. Plaintiff Tommy Britt was and is employed by Defendant Production Testing Services, Inc. His consent to be a Plaintiff in this collective and class action is on file as Dkt. 6.

3.  Defendant Production Testing Services, Inc. (PTS) is a foreign for-profit corporation organized under the laws of the State of Alaska with its principal place of business in Houston, Harris County, Texas. This Defendant has been served with process.

4.  Defendant Robert A. Hoff is an individual who is a resident of Houston, Harris County, Texas. This Defendant has been served with process.

## JURISDICTION AND VENUE

5.  Jurisdiction of this action is conferred on this Court by § 216(b) of the FLSA, and by the provisions of 28 U.S.C. § 1337, relating to "any civil action or proceeding arising under any Act of Congress regulating commerce." This Court has jurisdiction over the state law claim under 28 U.S.C. § 1367.

6.  Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or emissions giving rise to the claim occurred in this judicial district and division. Wage payments were computed and processed in Houston, Harris County, Texas. Defendants also made classification decisions in Houston, Harris County, Texas. Venue is also proper in the United States District Court for the Southern District of Texas, Houston

Division pursuant to 28 U.S.C. § 1391(b)(1) because defendant Robert A. Hoff resides in Houston, Harris County, Texas.  Venue is also proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b)(1) because defendant Production Testing Services, Inc. resides in Houston, Harris County, Texas for venue purposes because it is subject to personal jurisdiction with respect to the civil action in question.  Defendant PTS conducts significant business operations in this District and Division.  The global headquarters of PTS are located in Harris County, Texas, which is in this District and Division.

7.  Defendant PTS operates in Harris County, Texas in the main office located at 6911 Signat Drive, Houston Texas 77041.  Defendants formulate and communicate decisions regarding work schedules and rates and methods of compensation from this office.

8.  Defendants employ Texas citizens in varying capacities.

9.  Defendant PTS advertises in Texas.

10.  Defendant PTS conducted sales calls in Texas.

11.  This cause of action arises from and is related to the contacts of Defendants with Texas, specifically Defendants' employment of United States citizens including a citizen of Texas and their subsequent failure to pay those citizens in accordance with the requirements of the FLSA and the AWHA.

## **FLSA COVERAGE**

12.  Defendant PTS was and/or is the employer of Plaintiffs and other individuals working as field operators and field supervisors who performed surface well operations, including frack flowback and exploration well testing within the meaning of 29 U.S.C. § 203(d). Defendant PTS, through its agents, servants and employees hired, employed, paid,

supervised, controlled his work, controlled work schedules and determined the rates and methods of compensation for Plaintiffs and potential opt-in Plaintiffs.

13.  Defendant Robert Hoff was and/or is the employer of Plaintiffs and other individuals working as field operators and field supervisors who performed surface well operations, including frack flowback and exploration well testing within the meaning of 29 U.S.C. § 203(d).  Defendant Hoff is the owner, CEO and President of PTS. As the owner, CEO and President of PTS, Hoff had the power to hire and fire employees.  As owner, CEO and President of PTS, he had the ultimate right to supervise and control work schedules and conditions of employment Plaintiffs and those similarly situated.  Based on information and belief, Defendant Hoff was ultimately the decision maker as to determining the rate and method of payment for Plaintiffs and those similarly situated.  Defendant Hoff had the ultimate authority to hire, employ, pay, supervise, control work, control work schedules and determine the rate and method of compensation for Plaintiffs and potential opt-in Plaintiffs.

14.  Plaintiffs were and/or are Defendants' employees within the meaning of the FLSA, 29 U.S.C. § 203(e).  Further, any potential opt-in Plaintiffs were or are Defendants' employees with the meaning of the FLSA, 29 U.S.C. § 203(e).

15.  Plaintiffs were and/or are Defendants' employee with the meaning of the FLSA, 29 U.S.C. § 203(e).

16.  Defendants are part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17.  Defendants are part of an enterprise in commerce within the meaning of 29 U.S.C. § 203(s)(1), in that Defendants had, and continue to have employees, including Plaintiffs and

other similarly situated employees, engaged in commerce or the production of goods for commerce. Further, Defendant PTS has and had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level). According to information published by Dunn & Bradstreet, Defendant PTS had estimated annual sales in the United States of $4,211,654.00.

18. Plaintiff and similarly situated employees were and/or are individual employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207 and as defined in 29 U.S.C. § 203.

## NATURE OF THE CASE

19. This is a collective action to recover overtime wages brought under the FLSA and a class action under the AWHA. Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b) and Rule 23, F.R.C.P. Plaintiffs file this amended complaint within twenty-one days of the filling of Defendants' Motion to Dismiss and Memorandum of Law in Support filed on August 1, 2016 (Dkt. 9) as allowed pursuant to Fed.R.Civ.P. 15(a)(1)(B).

## FACTS

20. Production Testing Services, Inc. is a global oil and gas service company that provides frack flowback and well testing services to clients in the United States and in other countries. Defendant PTS contracts with certain companies, including Strategic Employer Services, LLC to provide it with employees to provide the well testing and flowback related services that it provides to oil and gas producers. These producers produce oil and gas from wells that have been tested by Defendant PTS and from wells where Defendant

PTS has provided frack flowback services. These producers produce, refine and market oil and gas and related petro-chemical products in the United States and in other countries.

21. Based upon information and belief, Defendant Robert A. Hoff is an owner and the CEO and President of Production Testing Services, Inc. This Defendant acted directly and/or indirectly in the interests of Production Testing Services, Inc. in relation to Plaintiffs' employment with Production Testing Services, Inc. This Defendant has and had continuous and ongoing involvement in managerial responsibilities and operational control of Production Testing Services, Inc., including decisions regarding rates and methods of compensation. Defendant Robert Hoff signed Plaintiff Shelby Brown's employment contract with PTS as CEO/President of PTS. The document confirming Plaintiff Shelby Brown's employment specifically stated that "This offer of at will employment is not binding without the approval of the CEO."

22. Plaintiffs and other similarly situated employees worked for Defendants as field operators and field supervisors in connection with frack flowback and well testing services provided by PTS to oil and gas operators throughout the United States and globally.

23. Plaintiff Shelby Brown was employed for Defendants from March 27, 2015 through March 14, 2016. He was initially hired as a "field operator to perform work including performing well testing, i.e. frac-flow back, measurements, lab work and maintenance, complete charts and general maintenance, clean up and painting to keep equipment and site in its most presentable condition." His duties, and those of similarly situated employees, included rigging up equipment and monitoring equipment used for frack flowback and well testing for oil and gas wells.

24. He was hired with the label of a limited benefits employee and paid separate day rates for his work in the shop or travel and in the field.

25. At certain times, Plaintiff Shelby Brown had the title of "field supervisor" rather than "field operator". Plaintiff Shelby Brown's primary job duties were the same whether he was acting as field operator or field supervisor.

26. Opt-in Plaintiff Tommy Britt worked for Defendants from September, 2012 through May, 2016. He was initially hired as a field operator to perform work including performing well testing, frac-flow back, measurements, lab work and maintenance, complete charts and general maintenance and clean up and painting. Plaintiff Tommy Britt's duties included rigging up equipment and monitoring equipment used for frack flowback and well testing for oil and gas wells. He was rehired by Defendants on July 11, 2016. He was labeled as an employee throughout his employment with PTS, but was misclassified as an exempt employee beginning in December, 2014. Plaintiff Tommy Britt was given titles which included the phrase "supervisor", but as described in the facts in this amended complaint, his work was that of a non- exempt employee.

27. At certain times, Plaintiff Tommy Britt had the title of "supervisor" rather than "field operator". Plaintiff Tommy Britt's primary job duties were the same whether he was acting as an operator or field supervisor.

28. Plaintiffs' primary job duties as described herein were not the performance of management or supervisory duties for PTS whether they worked in the shop or in the field.

29. Plaintiffs and other similarly situated employees did not have the authority to hire or fire employees or to offer suggestions and recommendations as to hiring, firing, advancement,

promotion, or other status changes for other employees of PTS that were given additional weight by PTS than they would have been for any other employee.

30. Defendant PTS determined the rate and method of employment for Plaintiffs and other employees who were similarly situated. Based upon information and belief, Defendant Robert A. Hoff was required to approve the terms of employment for Plaintiffs and those employees similarly situated.

31. The employment records for Plaintiffs and other employees similarly situated were maintained by Defendant PTS under the ultimate authority and control of Defendant Robert A. Hoff as CEO and President of PTS.

32. Defendants attempted to illegally classify Plaintiffs and other employees similarly situated as exempt employees. This was an illegal misclassification.

33. Defendants exercised control over all aspects of the job duties, rates of pay, details of the work and all aspects of the job performed as to work in the shop or work in the field in frack flowback or well testing operations for oil and gas wells as to Plaintiffs and other employees similarly situated. Defendant PTS directed Plaintiffs and other employees similarly situated as to the oil and gas wells where they were to perform well testing or frack flowback operations and what their schedules would be. Defendant PTS provided the equipment to be used and specified how it was to be used. Plaintiffs and other employees similarly situated were required to comply with the policies and procedures of Defendant PTS or the oil and gas operator who was the customer of PTS while on the well site. Defendant Robert A. Hoff as CEO and President of PTS authorized, directed and approved of this control.

34.     The work performed by Plaintiffs and other employees similarly situated in performing well testing, frack flowback, measurements, lab work and maintenance, completing charts and general maintenance, clean up and painting was and is an integral part of Defendants' business of frack flowback operations and well testing for oil and gas operators.  This work included rigging up and rigging down oil field equipment used in frack flow back and well testing operations, operating this equipment, regulating pressure in the oil and gas wells and controlling flow rates during the flowback operations as directed.

35.     Plaintiffs and those similarly situated opportunity for profit and loss was not determined by any specific managerial skill, because they were not in fact managers. No college degree or advanced technical training was required.   They were field operators who performed hard manual labor in sometimes extreme conditions for Defendants in furtherance of the business of Defendants.  The work was hard and physically demanding.  They often were required to lift, connect and rig up pipes and oilfield equipment in the flowback and well testing operations.

36.     The equipment used by Plaintiffs and those employees similarly situated included oil field equipment used for flowback operations such as high pressure pipe, separators and flares. The equipment had to be rigged up in sometimes extraordinarily harsh weather conditions. The rigging up process could take from two to five days to up to two months.   The equipment and tools used by Plaintiffs and those employees similarly situated was provided by Defendant PTS.  Plaintiffs and other employees similarly situated were not required to furnish any significant investment of equipment relative to that of Defendant PTS.

37. The work performed by Plaintiffs and other employees similarly situated included manual labor on a routine, daily basis. No special skills and initiative were required of Plaintiffs and those employees similarly situated to perform the activities of performing well testing, frack flowback, measurements, lab work and maintenance, completing charts and general maintenance, clean up and painting.

38. Plaintiffs and those similarly situated worked exclusively for Defendants performing the job duties of well testing and flowback operators for months or years at a time.

39. Plaintiffs and other employees similarly situated were economically dependent on Defendant PTS and Defendant Robert A. Hoff for their jobs in well testing and frack flowback operations and for the payments received for that work. Their earnings were directly determined and dependent on the number of days that Defendant PTS scheduled them to work. These decisions were made pursuant to the ultimate authority of Defendant Robert A. Hoff.

40. The "economic reality" of the employment of Plaintiffs and other employees similarly situated who performed the same jobs was that of non-exempt employees, not independent contractors, supervisors, managers, independent or executive level exempt employees.

41. During the relevant statutory period, Plaintiffs and similarly situated employees regularly worked over 40 hours per week without receiving just compensation for their overtime hours worked based on the standards set out in the FLSA.

42. Plaintiff Shelby Brown worked hours over eight hours per day during the weeks of most, if not all, of the weeks from March 29, 2015 through March 19, 2016. He was not paid time and a half for the hours over eight hours per day at his wage rate of $75.00 per hour. This was calculated by dividing his field day rate of $600.00 per day divided by 8 hours.

43.   Plaintiff Shelby Brown worked hours over forty hours per week during most, if not all, of the weeks of March 29, 2015 through March 19, 2016.  He was not paid time and a half for the hours over forty hours per week at his wage rate of $75.00 per hour.

44.   During the work weeks from March 29, 2015 through March 19, 2016 Plaintiff Shelby Brown worked approximately 2292 hours of unpaid overtime without being paid overtime as required by the FLSA and the AWHA. These are estimates based upon information available at this time and will be supplemented as additional information is received from defendants in discovery.   Defendants failed to pay Plaintiff Shelby Brown an estimated $207,225.00 in unpaid overtime based upon his day rate of $600.00 divided by 8 hours multiplied by 2292 hours (the number of unpaid overtime hours).

45.   Plaintiff Tommy Britt worked hours over eight hours per day during the majority of the weeks from December, 2014 through May 14, 2016, and July 11, 2016 through the present, except for vacation, sick days and holidays.  He did not work overtime during twenty-two weeks during the months of January, 2015, March, 2015, May, 2015, June 2015, July, 2015, August, 2015, October through December, 2015, January, 2016 and March through May 2016.   He was not paid time and a half for the hours over eight hours per day at his wage rate of $63.38 per hour.   This wage rate was determined by dividing his total compensation for 2015 by 2080 hours.

46.   Plaintiff Tommy Britt worked hours over forty hours per week during the majority of the weeks of December, 2014 through May 14, 2016, and July 11, 2016 through the present. He did not work overtime during twenty-two weeks during the months of January, 2015, March, 2015, May, 2015, June 2015, July, 2015, August, 2015, October through December, 2015, January, 2016 and March through May 2016.   He was not paid time and

a half for the hours over forty hours per week at his wage rate of $64.38 per hour for 2014 and 2015 and $66.38 for 2016.

47.  During the work weeks from December, 2014 through May 14, 2016, and July 11, 2016 through the present, Plaintiff Tommy Britt worked approximately 1820 hours of unpaid overtime without being paid overtime as required by the FLSA and the AWHA. These are estimates based upon information available at this time and will be supplemented as additional information is received from defendants in discovery.  Defendants failed to pay Plaintiff Tommy Britt an estimated $257,850.00 in unpaid overtime based upon his 1820 hours of unpaid overtime hours multiplied by the appropriate year wage rate as set forth above.

48.  Defendants also failed to pay Plaintiffs and other similarly situated employees overtime compensation for hours worked in excess of eight hours per day in violation of the AWHA. Based upon information and belief, the following employees of PTS had similar jobs for PTS and were illegally paid a day rate and were not paid overtime for hours worked over eight hours per day and forty hours per week:

49.  Additionally, during the relevant statutory period, Defendants failed to treat Plaintiffs and other similarly situated employees as non-exempt employees for overtime purposes, although their job duties and actual work performed supported this treatment. Because Defendants failed to treat and/or classify Plaintiffs as a non-exempt employees under the FLSA and the AWHA, they failed to pay Plaintiff his legally required compensation.

50.  Through this lawsuit, Plaintiffs seek unpaid overtime compensation and an equal amount for liquidated damages for the three years prior to the filing date of this lawsuit up to the

present for themselves and for all similarly situated employees that exercise their right under the FLSA to "opt-in" to this action.

51. Through this lawsuit Plaintiffs seek unpaid overtime compensation and an equal amount for liquidated damages for the two years prior to the filing date of this lawsuit up to the present for themselves and for all similarly situated employees that exercise their right under the AWHA.

52. Plaintiff Shelby Brown raised the question of why he was paid a day rate with his supervisor, Greg Stalzer.  He was told that the company would not issue a 1099 to them or their compensation, but rather would issue a W-2.

53. On June 17, 2016, Plaintiffs' counsel agreed to an extension of time for the defendants to answer or otherwise respond to the original complaint until August 1, 2016. Based on information and belief, Defendant PTS attempted to settle potential overtime claims with other employees similarly situated to Plaintiffs with similar job responsibilities during this time period.

54. Plaintiff Tommy Britt was rehired by Defendant PTS on July 11, 2016.  He has essentially the same job duties, but is still not paid overtime pursuant to the FLSA and AWHA.

55. Some similarly situated employees were paid a day rate, while some were paid on a per hourly basis.  Regardless of the payment structure, Defendants failed to pay Plaintiffs and other employees similarly situated time and a half for hours worked over eight hours per day and forty hours per week as required by the AWHA and FLSA.

## COLLECTIVE ACTION ALLEGATIONS

56. Plaintiffs bring Count I against the Defendants as an opt-in collective action for individuals who worked as field operators and field supervisors who performed surface well operations, including frack flowback and exploration well testing employed by Defendants pursuant to 29 U.S.C. § 216(b).

57. The class of similarly situated employees sought to be certified under 29 U.S.C. § 216(b), is specifically defined as "all current and former employees of Defendant Production Testing Services, Inc. and/or predecessor companies of said entity, that held positions as field operators and field supervisors who performed surface well operations, including frack flowback and exploration well testing or similar job positions that included similar job duties, from April 28, 2013, through the present."

58. The precise size and identity of the group comprising similarly situated employees should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendant Production Testing Services, Inc., and its related and affiliated entities. Similarly situated employees include Ben Daigle, Otis Hicks, Joshua Jones, James Howell, Andrew Pamintuan, Jonathan Shay, Chase Broussard and Ryan Hatch.

59. Other similarly situated employees perform or have performed the same or similar work as the Plaintiffs. Like the Plaintiffs, other similarly situated employees work or worked as field operators and field supervisors who performed surface well operations, including frack flowback and exploration well testing or similar job positions and are paid in the same fashion as Plaintiffs. Further, other similarly situated employees are not exempt from receiving overtime under the Act.

60.   The experiences of the Plaintiffs, with respect to pay, is typical of the experiences of other similarly situated employees.

61.   Defendants' failure to pay overtime compensation and failure to pay Plaintiffs for all hours worked at the rates required by the FLSA results from a single decision, policy or plan and does not depend on the personal and individual circumstances of each class member or potential opt-in Plaintiff.

62.   The facts alleged in the above paragraphs which are incorporated herein and support the allegations of collective action as alleged.

63.   Although the amount of damages may be individual in character for each opt-in Plaintiff, there is a common nucleus of liability facts that applies consistently to all potential Plaintiffs, and therefore a collective action is the most efficient means for these issues to be resolved for Plaintiffs, potential opt-in Plaintiffs, and the Defendants.

## COUNT I – VIOLATIONS OF THE FLSA

64.   Plaintiffs incorporate each and every one of the above allegations as though fully set forth herein.

65.   Defendants violated 29 U.S.C. § 207 by misclassifying as exempt and by failing to pay Plaintiffs and other similarly situated employees that they employed at 1.5 times their regular rate of pay for all hours worked in excess of 40 hours during a workweek.

66.   Defendants permitted Plaintiffs and other similarly situated employees to routinely work more than 40 hours per week without overtime compensation. Moreover, during the relevant statutory period, Defendant PTS failed to keep accurate time records for all hours worked by Plaintiffs and other similarly situated employees.

67. Plaintiffs and other similarly situated employees have been damaged by these violations of the FLSA.

68. Defendants' violations of the FLSA have been repeated, willful, and intentional. This is shown by the facts alleged in above in this amended complaint. Defendants willfully and purposefully failed to pay overtime wages to Plaintiffs and other employees similarly situated even though they were non-exempt employees and were not independent contractors, managers or supervisors or subject to any other exemption under the law. The actions of defendants were not reasonable and there is no reasonable ground for believing that their acts were in conformity with the FLSA or the AWHA.

## COUNT II – STATE LAW OVERTIME WAGE CLAIM

69. Plaintiffs incorporate each and every one of the above allegations as though fully set forth herein.

70. Defendants employ field operators and field supervisors in Alaska, where state law establishes overtime wage requirements generally parallel to those set forth in the FLSA. In particular, Alaska Stat. Ann. § 23.10.060 requires that non-exempt employees be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty worked in any workweek. An employee is also entitled to overtime compensation for hours worked in excess of eight hours per day.

71. Defendants owe Plaintiffs and its other field operators and field supervisors the overtime wages to which they were entitled under Alaska law.

72. Defendants willfully deprived Plaintiffs and its other field operators and field supervisors of part of their wages by failing to pay overtime in violation of overtime pay provisions of state wage and hours laws. Alaska Stat. Ann. § 23.10.060.

73. Plaintiffs and the class members were damaged in the amount of their unpaid overtime wages.

74. The class is entitled to a judgment for actual damages, liquidated or punitive damages and attorney's fees and costs.

75. Plaintiff Shelby Brown, as the representative party, is entitled to recover appropriate compensation for having performed the duties of class representative.

76. The class is entitled to any other relief which the Court may deem just and appropriate to redress the harm inflicted by Defendants and to prevent further violations of the law.

## COUNT III – CLASS ACTION ALLEGATIONS

77. Plaintiff Shelby Brown incorporates each and every one of the above allegations as though fully set forth herein.

78. Plaintiff Shelby Brown brings this case as a representative of a class of all other persons similarly-situated.  Plaintiff's FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b), and his state law claim is brought under Rule 23 of the Federal Rules of Civil Procedure.

79. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiff Shelby Brown seeks the certification of a class of all persons who, during the relevant periods of limitations:

> Have been employed as field operators and field supervisors (or any other job title the duties of which are substantially similar in scope) by Defendants, worked overtime as defined by the FLSA and the comparable applicable Alaska wage and hour statutes and regulations, and have not been paid overtime compensation of one and one half times the hourly pay rate for all overtime work performed.

80. The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

81. There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members.

82. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants have consistently failed to pay Plaintiff and class members one and one-half times their regular rate of pay as required by the FLSA (29 U.S.C. § 207) and Alaska Stat. Ann. §23.10.060;

b. Whether class members are exempt from receiving overtime wages under the FLSA (29 U.S.C. § 213) and Alaska Stat. Ann. §23.10.060;

c. Whether Defendants have, in failing to make such overtime payments to its field operators and field supervisors, acted willfully and with the intent of depriving members of the class of such compensation;

d. Whether Defendants have failed to keep accurate records of the time worked by its employees performing the above-mentioned activities where required by law; and

e. Whether Defendants unlawfully and willfully failed to pay unpaid overtime compensation to members of the class upon the termination of their employment where required by law.

83. Pursuant to FRCP 23(a)(3), Plaintiff Shelby Brown's wage and hour claim and Defendants' anticipated affirmative defenses thereto are typical of the claims of all class members and of Defendants' anticipated affirmative defenses thereto.  Defendants' act and omissions constitute a violation of the wage laws of the State of Alaska.

84. Plaintiff Shelby Brown will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiff Shelby Brown is similarly-situated with, and has suffered similar injuries as, the members of the class he seeks to represent. Plaintiff Shelby Brown feels that he has been wronged, wishes to obtain redress and obtain the unpaid wages to which he is entitled and wants Defendants stopped from continuing to violate federal and state wage-hour laws with respect to similarly-situated employees.

85. Plaintiff Shelby Brown has retained counsel experienced in handling complex litigation. Neither Plaintiff Shelby Brown nor his counsel has an interest which is in conflict with the class or which might cause him not to vigorously pursue this action.

86. Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices or could as a practical matter dispose of the legal claims of class members not parties to such separate adjudications.

87. Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because as class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## DAMAGES

88. Defendants are liable to Plaintiffs and all opt-in Plaintiffs for the full amount of all of their unpaid overtime compensation, together with an additional equal amount as liquidated damages, post-judgment interest as allowed by law, reasonable attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Shelby Brown and Tommy Britt respectfully request that judgment be entered in their favor and in favor of other similarly situated employees, awarding:

1. An order certifying that an action for violations of the FLSA by Defendants may be maintained as a collective action pursuant to 29 U.S.C. §216(b);

2. Damages as appropriate and available for violations of the FLSA;

3. Reasonable attorney's fees and costs as permitted by the FLSA;

4. Order that this case shall proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure with Plaintiff as a class representative, and Plaintiff's counsel as class counsel;

5. Enter final judgment in favor of the class for actual damages in the amount proven at trial;

6. Enter final judgment in favor of the class for liquidated or punitive damages in an amount equal to a percentage of the aggregate underpayment of wages as proven at trial;

7. Enter final judgment in favor of the class against Defendants reimbursing all costs and expenses incurred in bringing and prosecuting this case, including reasonable attorney's fees and expenses of any necessary expert witnesses;

8. Enter an order which sets forth the terms for distributing sums recovered in this action to class members, including a provision that awards to Plaintiff, as the representative party, appropriate compensation for having performed the duties of class representative;

9. Enter final judgment in favor of the class against Defendants indemnifying the class for its reasonable attorney's fees, or, in the alternative, enter an Order allowing class counsel's fees to be paid out of the common fund created as a result of this action;

10. Post-judgment interest as allowed by law; and,

11. Such other further relief, whether in law or in equity, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff has requested a trial by jury on any issue triable of right by a jury.

Respectfully submitted,

/s/ John David Hart
JOHN DAVID HART
State Bar #09147700

LAW OFFICES OF JOHN DAVID HART
Wells Fargo Tower
201 Main Street, Suite 1720
Fort Worth, Texas76102
(817) 870-2102 – Telephone
(817) 332-5858 – Facsimile
johnhart@hartlaw.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this the 22nd day of August, 2016, a true and correct copy of the above and foregoing document was served electronically through the Court's ECF System to all parties of record.

s/John David Hart
JOHN DAVID HART